Simon P. Kennedy, Esq. SBN 023938
PARKER STRAUS, LLP
6619 N. Scottsdale Rd.
Scottsdale, AZ 85250
Telephone: (480) 296-2044
Facsimile: (480) 296-2045

Attorneys for Plaintiff,
Genny Villa

IN THE UNITED STATES DISTRICT COURT

FOR THE STATE OF ARIZONA

| | |
|---|---|
| GENNY VILLA, a married woman,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>UNIVERSITY OF PHOENIX, and educational entity; APOLLO GROUP, INC., a corporation; ARLENE LOCKLIN and JOHN DOE LOCKLIN; NATALIE SHIPMAN and JOHN DOE SHIPMAN; and DOES 1-100,<br><br>　　　　Defendants. | **Case No:**<br><br><br>**COMPLAINT** |

Plaintiff, by and through counsel undersigned, for its Complaint against Defendants, and each of them, hereby states, alleges, and complains the following:

## **THE PARTIES**

1. Genny Villa ("Villa") is a resident of Maricopa County, Arizona, and at all times relevant hereto was an employee of the University of Phoenix.

2. The University of Phoenix is a for-profit educational facility operating online colleges and physical campuses throughout the United States, with its principal place of business in Phoenix, Arizona.

-1

3. Upon information and belief, the University of Phoenix is a wholly-owned subsidiary of Apollo Group, Inc. a publicly traded corporation with its principal place of business in Phoenix, Arizona.

4. At all times relevant to this Complaint, Arlene Locklin ("Locklin") was the Director of Enrollment at University of Phoenix and the supervisory head of the department in which Villa worked.  Locklin is believed to be a resident of Maricopa County, Arizona

5. At all times relevant to this Complaint, Natalie Shipman ("Shipman") was the immediate supervisor of Genny Villa and subordinate of Locklin.  Shipman is believed to be a resident of Maricopa County, Arizona.

6. Defendants John Doe Locklin and John Doe Shipman are the spouses of Locklin and Shipman, respectively, and are believed to be residents of Maricopa County, Arizona.  The true first names of John Doe Locklin and John Doe Shipman are unknown to Plaintiff and they are sued with these fictitious names.  When their true names have been ascertained, Plaintiff will seek leave of Court to amend this Complaint to allege their true names.

7. Plaintiff also names Does 1-100 in their fictitious capacity, but alleges that these Does, whether corporate entities, partnerships, limited liability companies, or individuals and their spouses, are in some way responsible for the acts complained of herein and once their true identity is ascertained, Plaintiff will seek leave of court to amend this complaint to name those Doe Defendants by their true name or identity.

8. Locklin and Shipman are sued herein both in their official capacities with University of Phoenix and/or Apollo Group, Inc. as well as in their individual capacities.

9. At all times relevant to this Complaint, Locklin and Shipman were acting within the scope of their employments with University of Phoenix and/or Apollo Group, Inc. and, therefore, University of Phoenix and/or Apollo Group, Inc. are liable for the acts of Locklin and Shipman under the doctrine of *respondeat superior*.

-**2**

10. At all times relevant to this Complaint, all Defendants were agents of the others in all actions and matters set forth; each was acting as the agent of the other and was acting in the scope of and cover of their agency with their principal, and every act of each defendant was ratified by the others.

## JURISDICTION

11. This is an action seeking equitable and legal relief and is instituted, in part, under the Federal Age Discrimination in Employment Act ("ADEA"). This action also involves wrongful termination claims of Plaintiff in that Defendants breached public policy outlined in the False Claims Act [31 U.S.C. Section 3729(a)(1) – (a)(3)]. Moreover, this is an action that involves Arizona claims under A.R.S. sections 23-1501, 41-1463, 41-1464 and Arizona common law claims for wrongful termination, intentional and negligent infliction of emotional distress, intentional interference with employment contract, and breach of the implied covenant of good faith and fair dealing inherent in employment contracts. This Court has jurisdiction to hear and determine this action and to grant the relief requested pursuant to 28 U.S.C. Sections 1331, 1343, and 1367.

## FACTUAL ALLEGATIONS

12. In September 2011, Villa was hired as an Enrollment Advisor at the University of Phoenix. Her job was to handle incoming phone calls from potential students, identify their educational goals, and help them become a student of one of the online programs University of Phoenix offered.

13. Her training began in September 2011 and was completed in November 2011. This training included call handling techniques, techniques to keep callers interested in programs, dialogues designed to motivate callers to apply for financial aid and ultimately become a student enrolled in one of the online colleges.

-**3**

14. She became a member of the International Healthcare team. This team was given the goal to get international applicants into one of the health care programs that University of Phoenix offered. These programs ranged from Associates Degree programs to Masters Degree programs.

15. All throughout training, Villa and other trainees were advised that University of Phoenix does not have a quota system.

16. As she began her enrollment requirements in her team, Villa discovered that all inbound calls were handled like a call center. A call would come in and preliminary information about the caller was obtained to gauge the seriousness of the caller's interest in one of the offered programs. Then the calls were routed to enrollment teams that were structured in tiers – Tier 1 was for enrollment advisors who routinely converted a high number of calls into students; Tier 2 was for team members with less conversion numbers but would be able to take calls if Tier 1 could not take them and Tiers 3 and 4 would get calls from students with less interest as well as a list of phone numbers for potentially interested students leaving their contact information on the school's website. Tier 3 and 4 were essentially cold call sales teams.

17. Additionally, Villa learned that in order to stay on a Tier 1 or Tier 2 team, she had to have a certain amount of calls converted into students. At that point, her duties as an enrollment adviser were to communicate with the students to ensure they received financial aid and to keep up with the students for a set number of their first classes, up until the point where the students could no longer withdraw and receive a full refund.

18. From December 2011 until March 2012, Villa was a top performing enrollment adviser, continually making her quota of sales (i.e., registration of new students). In March 2012, however, Villa took a family vacation from her accrued vacation time. When she returned from her vacation, Villa was no longer in a top tier team, but because she had no sales for the period she was on vacation, she was placed into the Tier 4 category of sales. Prior to her

-**4**

vacation, Villa received approximately 25 leads per week. After her vacation she averaged roughly 5 leads per week.

19.  Despite the lack of leads, Villa continued to adhere to her duties as an Enrollment Adviser. Despite being advised that there was no quota system in place, in June 2012, Shipman met with Villa to advise her that her conversion numbers were too low and her job was in danger.

20.  At the same time, Shipman stated that Villa could succeed if she tweaked her performance, but also advised that given her background, University of Phoenix would allow her to apply for Human Resource level jobs. Regardless, her sales numbers had to increase or she would be looking at termination sometime around August.

21.  Villa, who is a woman over the age of 40, interviewed for over ten (10) different positions for which she was highly qualified, having 20 years of Human Resource experience. Villa was also placed in the bottom tier of sales after having taking her vacation time, when other younger Enrollment Advisers, who did not take vacation time were given more opportunities to succeed in their positions.

22.  Where younger Advisors were in lower tier categories, they were not disciplined for lack of sales and some Advisors, who were also students of the University were never given time lines by which they were required to increase sales. Many of these Advisors spent their days talking with friends, reading, and working on hobbies.

23.  Nevertheless, Villa received a written employee review that stated she underperformed in her duties. The only indicia of under performance by Villa was her lower sales numbers after she took accrued vacation time.

24.  University of Phoenix and/or Apollo Group, Inc. discriminated against Villa due to her age and family requirements. Rather than starting Villa back at the same tier of sales she was in prior to her vacation time, she was forced into the lowest tier of sales and never given the

-**5**

same opportunities to succeed that younger employees or employees who were also students received.

## FIRST CLAIM FOR RELIEF

**(Violation of the ADEA, 29 U.S.C. Section 623(a)(1))**

25. University of Phoenix, and Apollo Group, Inc. are employers within the meaning of 29 U.S.C. Section 630(b).

26. The aforesaid action of the individual Defendants, who were agents of University of Phoenix and Apollo Group, Inc., violated 29 U.S.C. Section (a)(1) in that Villa was discriminated against because of her age.

## SECOND CLAIM OF RELIEF

**(Wrongful Discharge – A.R.S. Section 23-1501(3)(b))**

27. Villa was wrongfully discharged in November 2012 in violation of the public policy of the State of Arizona because of her prescribed duties in violation of the False Claims Act (31 U.S.C. Sections 3729(a)(1)-(a)(3).

28. By virtue of the above actions, Locklin, Shipman, University of Phoenix, and the Apollo Group, Inc. are liable to Villa for wrongful discharge in violation of A.R.S. Sections 23-1501(3)(b).

## THIRD CLAIM OF RELIEF

**(Violation of Arizona Civil Rights Act, A.R.S. Section 41-1463)**

29. University of Phoenix, Apollo Group, Inc., Locklin and Shipman are employers within the meaning of the Arizona Civil Rights Act.

30. The aforesaid actions of the individual Defendants, who were agents of University of Phoenix and Apollo Group, Inc. violated A.R.S. Section 41-1463 and Section 41-1465 in that Villa was discriminated against because of her age, causing injury and damage to her as authorized by A.R.S. Section 41-1481.

-6-

## FOURTH CLAIM OF RELIEF

### (Violation of Arizona Civil Rights Act, A.R. S. Section 41-1464

31. University of Phoenix, Apollo Group, Inc., Locklin and Shipman are employers within the meaning of the Arizona Civil Rights Act.

32. University of Phoenix, Apollo Group, Inc., Locklin and Shipman intentionally and unlawfully retaliated against Villa in violation of A.R.S. Section 41-1464, causing injury and damage to her as authorized by A.R.S. Section 41-1481.

## FIFTH CLAIM FOR RELIEF

### (Wrongful Discharge in violation of public policy – Common Law)

33. As a proximate result of the actions of University of Phoenix, Apollo Group, Inc., Locklin and Shipman described above, University of Phoenix, Apollo Group, Inc., Locklin and Shipman are liable to Villa for wrongful discharge in violation of public policy established by common law in *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025 (1985).

## SIXTH CLAIM OF RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

34. The retaliation of Villa by University of Phoenix, Apollo Group, Inc., Locklin and Shipman breached the implied covenant of good faith and fair dealing inherent in all employment contracts in Arizona, causing Villa to be deprived of the benefits of her employment agreement. As a result thereof, University of Phoenix, Apollo Group, Inc., Locklin and Shipman are liable to Villa for breach of the implied covenant of good faith and fair dealing inherent in Villa's employment contract.

/ / /

/ / /

/ / /

## SEVENTH CLAIM FOR RELIEF

### (Intentional Interference with Contractual Relations)

35. By their actions, Locklin and Shipman intentionally interfered with the contractual relationship between Villa and her employer for an improper and unjustified purpose. The actions of Locklin and Shipman are not protected by any privilege or qualified privilege. Said actions caused Villa to lose her job with University of Phoenix and/or Apollo Group, Inc. and to lose certain benefits with a consequent loss of income. As a result thereof, Locklin and Shipman are liable to Villa for the tort of intentional interference with contractual relations

## EIGHTH CLAIM OF RELIEF

### (Breach of Contract)

36. The foregoing actions of University of Phoenix and/or Apollo Group, Inc. violate the employment contract with Villa as set forth in the policies and procedures of said Defendants and Arizona State Law in that Villa has been terminated in employment and relatiated against in employment for her failure to adhere to a sales quota system proscribed by the Federal False Claims Act and because of her age. As a result of this conduct, University of Phoenix and/or Apollo Group, Inc. are liable to Villa for breach of contract and the damages caused thereby.

## NINTH CLAIM OF RELIEF

### (Intentional Infliction of Emotional Distress)

37. The conduct of Defendants identified above was intentional, outrageous and unconscionable in its scope and severity and Defendants either intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from their conduct. Furthermore, this conduct was without legal justification. Such actions caused severe emotional distress to Villa.

/ / /

/ / /

## TENTH CLAIM OF RELIEF

### (Negligent Infliction of Emotional Distress)

38. The conduct of Defendants, as previously alleged, unintentionally caused emotional distress and bodily harm to Villa. Defendants (1) should have realized that their conduct involved unreasonable risk of causing distress and (2) from the fact known to them they should have realized that the distress might result in illness or bodily harm. As a result therefore, Defendants are liable to Villa for the tort of negligent infliction of emotional distress.

## RIGHT TO EQUITABLE RELIEF

39. Under the Firth through Fifth claims of relief above, the Court may order such affirmative action as may be appropriate, including payment of front pay or reinstatement of employment, or any other equitable relief as may be appropriate where the employer intentionally engages in an unlawful employment practice.

40. Villa has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and is entitled to equitable relief of injunction, promotion, back pay, font pay, rescission of negative job performance evaluations, and reinstatement of employment against all Defendants.

## DAMAGES

41. By reason of Defendants' actions, Villa has been deprived of income in the form of past wages and fringe benefits in an amount to be proven at trial and all Defendants are liable for said damages and/or equitable relief.

42. By reason of the Defendants' actions, Villa has been deprived of future income in the form of wages and fringe benefits to the date of her probably retirement in an amount to be presented at trial and all Defendants are liable for said damages and/or equitable relief.

43. As a proximate result of Defendants' actions, Villa has suffered and will continue to sufer for the rest of her life emotional distress, mental anguish, anxiety, anger, pain and

suffering, stress, insecurity, shame and depression.  Villa is therefore entitled to recover compensatory damages against all Defendants for these injuries in an amount to be proven at trial.

44. As a direct and proximate result of the aforesaid acts of Defendants, Villa has suffered damages for loss of reputation reasonable suffered in the past and reasonably likely to be suffered in the future.

45. Villa is entitled to recover from the Defendants damages regarding the nature, extent and duration of injuries she has suffered.

46. By reason of the Defendants' actions, Villa has had to secure the services of an attorney and expert witnesses and is therefore entitled to recover from the Defendants reasonable attorney's fees and expert witness fees in pursuing this litigation.

47. As a direct and proximate result of Defendants' actions, Villa has sustained damages under her claims for violation of the ADEA and the Arizona Civil Rights Act as follows (1) wages, salary, employment benefits and other compensation denied or lost to Villa by reason of these violations, (2) interest on the amount describe above calculated at the prevailing rate, (3), liquidated damages, (4) all damages pursuant to 29 U.S.C. Sections 216(b) and 626(b); (5) all damages allowed pursuant to A.R.S. Section 41-1481.

48. As a direct and proximate result of the wrongful acts of Defendants as alleged herein, Villa will be placed in a higher tax bracket as a result of receiving future losses in a lump sum, and Defendants should pay the increase in said taxes as a result of receiving future losses in a lump sum.

49. The aforesaid actions of the part of all Defendants constitute a malicious, reckless or callous indifference to the rights of Villa.  As a direct and proximate result of such conduct, all Defendants are liable to Villa for punitive damages.

WHEREFORE, Villa prays for judgment against Defendants, and each of them, as follows:

1. For compensatory, consequential, liquidated and general damages in such sum as will be proven at trial;
2. For equitable relief as described above;
3. For attorney's fees, expert witness fees, and costs;
4. For punitive damages in an amount to be awarded by the trier of fact;
5. For an amount to compensate Villa for increased taxes she will have to pay as a result of receiving compensation for future losses in a lump sum;
6. For all costs of this action;
7. For judgment interest at the legal rate of 10% per annum from the date of this judgment until paid on all sums due;
8. For such other and further relief as is just and proper.

DATED this 29th day if May, 2013

                        PARKER STRAUS, LLP

                        By: /s/ Simon P. Kennedy
                        _____
                        SIMON P. KENNEDY, ESQ.
                        Attorneys for Plaintiff,
                        Genny Villa